**VIRGINIA:**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ADVANCED TOWING COMPANY, LLC )<br>        *Plaintiff*, )<br>v. )<br>   )<br>THE COUNTY BOARD OF )<br>ARLINGTON COUNTY )<br>SERVE: MinnChau Corr, County Attorney )<br>    Office of the County Attorney )<br>    2100 Clarendon Blvd. Suite 403 )<br>    Arlington, VA 22201 )<br>       *Defendant*, )<br>   ) | Civil Action No.: 1:25-cv-473 |

**COMPLAINT**

COMES NOW, Plaintiff Advanced Towing Company, LLC ("Plaintiff" or "Advanced Towing"), by Counsel, and states as follows for its Complaint against the County Board of Arlington ("Defendant" or the "Board"), pursuant to 42 U.S.C. §1983 *inter alia,* for violations of rights guaranteed by the Virginia Constitution and the United States Constitution:

**PARTIES**

1.    Advanced Towing is a Virginia limited liability company with its principal place of business at 4000-C North 5th Road, Arlington, Virginia 22203.

2.    Advanced Towing operates as a towing recovery operator within the meaning of Virginia Code § 46.2-116 and Arlington County Code ("ACC") § 14.3-2.

3.    Defendant, the County Board of Arlington County, is the governing body of Arlington County, Virginia, responsible for enacting and enforcing local ordinances. It is a political subdivision of the Commonwealth of Virginia and thus subject to the Fourteenth Amendment of the U.S. Constitution.

1

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and thus implicates Federal law.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §. 1391(b).

## FACTUAL BACKGROUND

### *Advanced Towing's Business Operations and Legal Compliance*

6.      Advanced Towing provides towing and recovery services to private property owners in Arlington County, ensuring that parking lots remain accessible to customers and tenants by removing unauthorized vehicles.

7.      Specifically, Advanced Towing's business is based upon "trespass towing" contracts with private property owners in Arlington, both residential and commercial, who allow the company to remove trespassing vehicles on their property under clearly defined conditions. All said contracts are between private parties and solely relate to private property.

8.      As a long-standing business in the County, Advanced Towing operates in compliance with Arlington County Code Chapter 14.3, which regulates towing practices in the County, including signage requirements, storage procedures, and notification obligations.

### *The Unpopularity of Trespass Towing in Arlington*

9.      Arlington County is a densely-populated urban county in northern Virginia with limited parking options.  Towing is an emotional issue there, as County residents and visitors often park in private, restricted areas and become candidates for towing.

10.     The towing experience, for obvious reasons, generates negative feelings towards the industry and makes it a target for local politicians in Arlington County, which is a single-party

jurisdiction with its substantive election occurring except in the mid-June Democratic primaries, where only the most motivated voters appear.

11.     Therefore, politicians in Arlington are incentivized to "crack down" on "predatory towing practices" and generate positive goodwill amongst their constituents, especially those who are likely to park on another's private property.

12.     Advanced Towing is the largest towing company in Arlington and has been in business twenty years.  As a result, it has become a lightning rod for negative stories about the towing industry in Arlington and a target of local politicians.    It has also been targeted by state agencies ostensibly seeking to "protect consumers."[1]

13.     Despite (or perhaps because of) that history of being described and targeted as a "predatory" business, Advanced Towing, through John O'Neill, its managing partner, has for the past five years participated in Trespass Towing Advisory Board ("TTAB") meetings, which is an publicly accessible advisory board for discussing "trespass towing" issue with representatives from the industry, the police and the public.

### *Passage of 2024 Legislation to Restrict Towing*

14.     During the 2024 Legislative Session, the Virginia General Assembly passed HB 959 and HB 1287, amending Va. Code §46.2-1232, which governs the ability of local governments in Virginia to regulate trespass towing operations on private property.    Copies of that legislation is attached hereto as Exhibits A and B.

---

[1] In 2020, the Office of the Attorney General ("the OAG") ostensibly investigated Advanced Towing for "predatory towing practices" and sought $5.0 million in damages.  After eighteen months of litigation and a four-day trial, the Arlington County Circuit Court found that the OAG had seven minor violations over four (4) years for a damage total of **$1,050.00**. See Case No. 2020-1995, *Commonwealth of Virginia v. Advanced Towing Company, LLC*.

15.     This legislation was sponsored by Del. Alphonso Lopez, who represents Arlington County in the Virginia Legislative Assembly and has been a long-standing critic of Advanced Towing (allegedly arising from his own towing incident in 2022). *See* Ben Paviour, *Towing companies ignite passions in General Assembly,* Virginia Public Media (Feb. 13, 2023), https://www.vpm.org/news/2023-02-13/general-assembly-towing-fees-virginia.

16.     Prior to the enactment of these amendments, Arlington County (which is located in Planning District 8 of Virginia) did not have certain powers, e.g. it lacked authority for requiring towers to obtain a "local permit" before engaging in towing operations between the County, pursuant to Section 46.2-1232.[2]

17.     After the enactment of HB 959 and HB 1287, which took effect on July 1, 2024, Arlington County, through its Board of Supervisors decided voted in 2024 to investigate a "local permit" system through potential amendments to the Arlington County Code, specifically Section 14.3; that process began with the forwarding of those proposals to TTAB.

### Consideration of New Provisions to Towing Ordinance

18.     In June 2024, TTAB members considered certain potential amendments to Arlington County Code Section 14.3, which included enactment of the local permit ordinance ("the Local Permit Ordinance"). See Exh. C.

19.     During this meeting, O'Neill voiced concerns about the proposed permitting system arguing that Arlington's approach would impose illegal burdens on the industry and its customers, who are private property owners seeking to restrict trespassers. *Id.*

---

[2] Notably, the "local permit" laws originally applied to towing companies that operated in localities *but had storage lots outside those localities*. Since that would require the towing of cars across county lines, the General Assembly required such "foreign towers" to obtain a local permit – it was not required of towers who simply operated within the locality.

20.    Other industry representatives on TTAB also opposed the County Board's related proposal to submit all private towing contracts before obtaining a "local permit," emphasizing that such disclosure was invasive, unnecessary and inconsistent with other jurisdictions that only require the disclosure of contracts when there is an investigation of illegal conduct. Id.

21.    In the June 2024 meeting and later meetings of TTAB, it became clear evident the County intended to go forward with the Local Permit Ordinance for Arlington County and use that as a tool to weed out companies which it considered "unpopular" in the general public.

22.    For example, the Local Permit Ordinance, as proposed, granted the County Manager the unfettered discretion to issue (or revoke) a "local towing permit" for Arlington County, even for companies that already existed, thus putting them out of business.

23.    In addition, the proposed Local Permit Ordinance would require that any regulated tower submit each and any private towing contract to the County for approval *even if the tower already has obtained a local permit*

24.    To wit, the proposed language stated as follows:

**§ 14.3-12. Violations. Permits.**

A.    All towing and recovery operators engaged in the removal of trespassing vehicles from property by or at the direction of the owner, operator, lessee, or authorized agent in charge of the property in Arlington County must obtain an approved locality permit prior to the initiation of any such operations and by January 31st of each subsequent year.

B.    To obtain a permit to tow vehicles from private property, the following documents must be provided:

1. Name, address, and telephone number of the business engaged in immobilizing or towing;
2. Name, telephone, and email address of business owner or chief executive officer;
3. A copy of the towing and recovery operator's business license;
4. Address, telephone number, and vehicle storage capacity of each storage site to which vehicles will be towed;
5. Number of tow trucks to be operated in Arlington County;
6. Proof of insurance as required by VA Code § 46.2-2143
7. Copies of all Driver Authorization Documents issued by the Virginia Department of Criminal Justice Services for all drivers employed by the towing and recovery operator; and
8. A copy of the contract to tow with the property owner, including contact information (phone number, mailing address or email address) of the property owner and agent authorizing towing. This includes all notifications of renewal periods and provisions for renewal or contract term. If a contract automatically renews, an updated agent contact for the property owner must be provided annually to the County Manager.

25.     On October 3, 2024, over the objection of O'Neill, TTAB voted to recommend the Local Permit Ordinance to the County Board for approval.

26.     As written, the Local Permit Ordinance imposed significant new restrictions on towing businesses, including (i) requiring all towing companies to obtain a "locality permit", issued at the County Manager's discretion, without clear approval or renewal criteria; (ii) allowing the County Manager to deny, suspend, or revoke permits without objective standards or procedural safeguards. (iii) mandating that property owners obtain additional authorization before a tow occurs, even when an existing contract is already in place between the towing operator and property owner; (iv) granting broad enforcement authority to issue penalties and suspensions, without providing a clear process for appeal or compliance restoration.

### *Approval by County Board; Takes Effect on March 1, 2025*

27.     The County Board initially set the Local Permit Ordinance for a hearing at their November 16, 2024 meeting and a Board Report was prepared, *See Board Report, attached as Exhibit D and Proposed Ordinance Changes, attached as Exhibit E.*

28.     Subsequently, the County Board moved the vote to its December 2024 meeting. *See* Nov. 17 Minutes, attached as Exhibit. F.

29.     On December 14, 2024, the County Board passed the Local Permit Ordinance in the form that had passed the TTAB. *See* Agenda, attached as Exhibt G and Minutes attached as Exhibit H.   It took effect on **March 1, 2025**.

30.     Per Section 14.3-12(E), the County Manager now has unchecked discretion ("sole discretion") to deny or revoke permits. This section states as follows:

E. Application Denial.

The County Manager may in the County Manager's sole discretion deny a towing and recovery operator's locality permit application to conduct a trespass towing business in Arlington County. Grounds for denial include if the towing and recovery operator:

1. Does not have an approved storage site;
2. Does not possess a valid business license;
3. Is not properly licensed by the state; or
4. Provides false information on the application.

The towing and recovery operator may reapply after application deficiencies are corrected. The denial shall remain in force for one (1) year from the date of denial if application deficiencies are not corrected upon reapplication.

31.     These provisions give the County Manager the ability to shut down Advanced Towing at any time for any reason, despite its long-standing legal business in Arlington.

32.     Further, the requirement that each private contract to tow from a private property would effectively allow the County to identify and harass private companies that do business with Advanced Towing, which has occurred on past occasions.[3]

33.     Given Arlington County's failure to establish clear and transparent permitting criteria, judicial intervention is necessary to prevent unconstitutional deprivation of rights.

### *The End for Advanced Towing?*

34.     The enactment of the Local Permit Ordinance is part of a concerted series of action by Arlington County to put Advanced Towing out of business, based upon alleged predatory towing practices which have not been proven in Court.  *See infra*.

35.     To that end, news articles that described Arlington County's efforts to regulate towing all focus on the regulation of Advanced Towing and the purported desire to "rein in" a company which tows trespassing vehicles for a living. *See e.g.* David Hodes, "Inside the Efforts

---

[3]     For example, St. Jones of the Arlington County Police Department (who served at the Hack Inspector at the time) was investigating a complaint against Advanced Towing for a tow that occurred at Frederick Court Condominiums told the manager that Advanced Towing was being investigated by the Virginia Attorney General's Office and that the Condominium "should find another towing company."

to Rein in an Aggressive Arlington Towing Company," N. Va. Mag. (Aug. 11, 2022), https://northernvirginiamag.com/culture/culture-features/2022/08/11/advanced-towing-arlington/.

36.     A review of the comments of any article relating to towing regulation in Arlington County demonstrate that the commenters expect any new regulation to "end the business" of Advanced Towing. *See e.g. Arlington Towing Ordinance Remains Up for Debate as County Board Delays Vote*, ARLnow (Nov. 23, 2024), https://www.arlnow.com/2024/11/23/arlington-towing-ordinance-remains-up-for-debate-as-county-board-delays-vote/; *Video: Towing Company Faces Off Against Lawmaker Who Sponsored New Towing Law*, ARLnow (Apr. 12, 2024), https://www.arlnow.com/2024/04/12/video-towing-company-faces-off-against-lawmaker-who-sponsored-new-towing-law/.

37.     Put simply, the sum total of these actions taken by Arlington County, including the enactment of the Local Permit Ordinance, are not just an effort to regulate the towing industry but to put Advanced Towing out of business.

## LEGAL STANDARD

### I.     Claims under § 1983

38.     The Federal statute 42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of their constitutional or federal statutory rights. Under the U.S. Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a local government can only be held liable for constitutional harms that are directly attributable to the government entity itself.

39.     According to the Court's opinion in *Monell*, a plaintiff must establish that a municipal policy or custom was the moving force behind a constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

40.    In *Monell*, the defendant agencies' policies requiring pregnant employees to take unnecessary, unpaid maternity leave violated the Fourteenth Amendment's Equal Protection Clause. The Supreme Court held that this single unconstitutional policy was sufficient to establish municipal liability under Section 1983. *See Monell*, 436 U.S. at 661-62 (citing *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 651 (1974)).

41.    Formal policies can take many forms. Virtually any decision made by a municipality or a department of local government—when adopted through a formal decision-making body—can amount to a formal policy under *Monell*. As the Supreme Court stated:

> "*Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, and injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers*." *See Monell*, 436 U.S. at 690.

42.    A local government may also be liable under Section 1983 when a municipal official with final policymaking authority takes an action that leads to a constitutional violation, even if the municipality itself has not formally adopted the decision as a policy.[4]

43.    Under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), final policymaker liability results from a single decision made by an official acting as the final policymaker for the municipality in the relevant subject matter. To establish liability under this doctrine, a plaintiff must prove four elements:

(i)    The local governmental entity must have authority and responsibility over the governmental function, as well as over the official allegedly committing the constitutional violation. *See Pembaur*, 475 U.S. at 480; Jett, 491 U.S. at 737;

---

[4] The Supreme Court has established this "final policymaker" theory of Monell liability in three key cases: *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *and Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

*Praprotnik*, 485 U.S. at 123; *McMillian*, 520 U.S. at 784-85.

(ii)     Only officials who possess final policymaking authority for the local government entity may, by their actions, subject the government to liability. *See Pembaur*, 475 U.S. at 483; *Praprotnik*, 485 U.S. at 123.

(iii)    The challenged action must have been taken under a policy adopted by the final policymaker responsible under state law for making policy in the relevant area of the local government's functions. *See Pembaur*, 475 U.S. at 482-83; *Praprotnik*, 485 U.S. at 123; *Jett*, 491 U.S. at 738; *McMillian*, 520 U.S. at 785.

(iv)    The official's adoption of the policy at issue must be sufficient to trigger Section 1983 liability regarding the alleged constitutional violation. *See Pembaur*, 475 U.S. at 482-83.

44.     The relevant § 1983 violation can also include the adoption of local ordinances that on its face violates constitutional rights, e.g. a law closing houses of worship or prohibiting certain speech in a designated area for political gatherings.

45.     In sum, Section §1983 "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.' " *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). That guarantee includes "the settled rule" that "exhaustion of state remedies is not a prerequisite to an action under . . . §1983." *Id.*

46.     In the present case, the amendments to Arlington County Code Chapter 14.3, i.e. the Local Permit Ordinance, constitute an official policy or practice of the County that violates the constitutional rights of Advanced Towing.  Indeed, its very presence in the Code of Arlington County is a clear and present danger to the company.

47.     Specifically, the County Board has formally granted unilateral discretion to the

County Manager to approve, deny, or revoke towing permits without defined standards or procedural safeguards. Such a policy subjects towing businesses to arbitrary enforcement and deprives them of fundamental due process protections.

48.     Further the Towing Permit Ordinance arbitrarily requires the towing company to turn over its private contracts, thereby disclosing terms, parties and other information; this requirement and any associated "approval" from the County has no relevant public purpose – but can serve as a tool to harass private companies that choose to do business with an "unpopular" towing business.

49.     Therefore, the Local Permit Ordinances reflect an official municipal policy that infringes on constitutional rights. Since the amendments are being implemented at the policy level, rather than through isolated acts of individual employees, the County itself is liable under Section 1983 for any legal or constitutional defects, which are as follows:.

### COUNT I:
### CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER § 1983
### FOR REGULATORY TAKING IN VIOLATION OF THE 5th AND 14TH AMENDMENTS
### OF THE UNITED STATES CONSTITUTION

50.     Plaintiff restates and incorporates each of the allegations stated previously herein.

51.     Here, Arlington County's 2024 Amendments to Section 14.3 of the Arlington County Code, i.e. the Local Permit Ordinance, constitute a Regulatory Taking Under the Fifth Amendment

52.     The Fifth Amendment of the United States Constitution provides that "private property shall not be taken for public use, without just compensation."

53.     A regulatory taking occurs when government action so burdens a business's operations that it effectively destroys its economic viability. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992).

54.     In *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), the Supreme Court established a three-factor framework for determining whether a regulation constitutes a compensable taking under the Fifth Amendment. This analysis requires an ad hoc, factual inquiry into: (i) the economic impact of the regulation on the claimant; (ii) the extent to which the regulation interferes with distinct investment-backed expectations; and (iii) the character of the governmental action. *See Clayland Farm Enterprises, LLC v. Talbot County, Maryland*, 987 F.3d 346, 353 (2021).

55.     Under the *Penn. Central* test alone, the enactment of the Local Permit Ordinance constitutes a regulatory taking as :

(a)   The economic impact to the Plaintiff is such which renders its business practically and commercially worthless; i.e, it is unable to tow from private property in accordance with its contract;

(b)   Given the long-standing legality of towing from private contracts under local ordinances and state law; and

(c)   The nature of the government action does not legitimately achieve a public use or demonstrably further a government interest.

56.     To wit, the enacted amendments to Chapter 14.3 of the Arlington County Code, i.e. the Local Permit Ordinance, establish a permitting system that is so vague, discretionary, and arbitrary that compliance becomes virtually impossible, placing the continued operation of Advanced Towing in jeopardy.

57.     Without a clear and objective standard for the issuance, renewal, or revocation of permits, Advanced Towing's ability to continue its longstanding business operations is entirely uncertain.

58.    By creating a regulatory framework that grants unchecked discretion to the County Manager to deny, suspend, or revoke permits without any defined criteria, Arlington County is imposing an uncompensated regulatory taking that strips Advanced Towing of its ability to conduct business.  Indeed, that is the purpose of the Local Permit Ordinance.

59.    Government actions that effectively destroy a business's viability, particularly when based on vague or discretionary standards, presumptively constitute a regulatory taking.

60.    The inability to obtain or renew a permit under the arbitrary and discretionary framework will result in the complete loss of Advanced Towing's business operations, thereby depriving it of any economic return on its investment in building its business in Arlington County.

61.    Essentially, these amendments to Chapter 14.3 of the Arlington County Code, i.e. the Local Permit Ordinance, will allow Arlington County to put Advanced Towing out of business by denying them a permit to operate under arbitrary procedures.

62.    The new permitting scheme, moreover, fundamentally alters the regulatory landscape in a manner that allows the County to arbitrarily determine whether or not private property can be towed from, which effectively turns that private property into a public use.

63.    Further, as of March 1, 2025 (the date the Local Permit Ordinance takes effect), the County has not put out any guidelines or procedures for applying for a towing permit.  *In essence, towing from privately-owned parking lots is now illegal in Arlington, as no permits have been awarded (yet) to the existing companies.*

64.    In sum, the County has enabled a permitting process that lacks procedural safeguards and allows government officials to make unchecked, arbitrary decisions regarding whether a company may continue to operate.  Meanwhile, it has failed to actually establish that process, thereby leaving the affected companies in permanent limbo. Such unilateral governmental

discretion in denying permits, without clear guidelines or judicial oversight, is precisely the kind of regulatory overreach that triggers Takings Clause protections.

65.    The Local Permit Ordinance has effectively deprived Advanced Towing of its vested property interests by placing its ability to continue operations at the whim of an unelected official with no clear or objective criteria governing permit approvals. The Supreme Court has consistently held that government regulations that leave businesses with no viable economic use of their property may constitute a compensable taking. *See Lucas, 505 U.S. at 1019; Penn Central, 438 U.S. at 124.*

66.    Because the Local Permit Ordinance substantially interferes with Advanced Towing's ability to continue lawful operations, it is an unconstitutional regulatory taking in violation of the Fifth Amendment's Takings Clause. Arlington County must be enjoined from enforcing these provisions unless it provides just compensation to Advanced Towing for the destruction of its business.

## COUNT II:
## CLAIM FOR INJUNCTIVE RELIEF AND COMPENSATORY DAMAGES UNDER §1983 BASED UPON *INTER ALIA* VIOLATIONS OF THE DUE PROCESS CLAUSE UNDER THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION

67.    Plaintiff restates and incorporates each of the allegations stated previously herein.

68.    The Fifth Amendment's Takings Clause is closely related to the Due Process Clause, which requires that no person shall be deprived of life, liberty, or property without due process of law. This includes the requirement for notice, hearing, and judicial review.

69.    Procedural due process requires fair notice and an opportunity to be heard before a deprivation of property or liberty occurs. By failing to establish objective criteria for permit approval, renewal, or revocation, Arlington County effectively allows arbitrary enforcement, violating due process protections.

70.     The Supreme Court has held that laws must treat similarly situated entities equally unless justified by a legitimate government interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

71.     The proposed amendments grant the County Manager broad discretion to deny, suspend, or revoke permits without clear criteria or an established appeals process. The absence of defined standards allows for arbitrary and capricious decision-making, violating Advanced Towing's procedural due process rights under the Fourteenth Amendment.

72.     Courts have consistently struck down statutes that fail to provide objective, measurable criteria for government decision-making, as they create an impermissible risk of arbitrary enforcement.

73.     For example, in *Assaid v. City of Roanoke*, 179 Va. 47 (1942), the Virginia Supreme Court ruled that the Roanoke City ordinance requiring *a license from the City* to operate a pool hall was unconstitutional because it granted the city manager unchecked discretion to approve or deny licenses without any guiding standards, notice, or opportunity for a hearing.

74.     This delegation of legislative authority to an administrative officer violated both the Virginia Constitution **and** the 14th Amendment of the U.S. Constitution, as it allowed decisions affecting individuals' rights to be made arbitrarily rather than through established principles. *Id.*

75.     The defendant, who had operated a pool hall in previous years and obtained a state license, was denied a city license without explanation, leading to his criminal conviction. The court found that such an ordinance effectively allowed the city manager to make decisions without accountability, judicial review, or procedural safeguards, which contravened fundamental due process protections. *Id.*

76.      Here, Arlington County's proposed permitting scheme fails to provide (i) objective

approval or renewal criteria, allowing for discriminatory or retaliatory application. (ii) a meaningful process for appeal, depriving businesses of a fair opportunity to challenge adverse permit decisions. (iii) adequate notice or hearing requirements, making it impossible for towing operators to know how to comply or contest decisions.

77.    Laws affecting property rights must be clear and provide fair notice to those subject to regulation. *See FCC v. Fox Television Stations, Inc*., 567 U.S. 239 (2012) at 253. The proposed amendments fail to define key terms and standards, leaving Advanced Towing and other businesses uncertain about compliance requirements.

78.    Moreover, substantive due process prohibits government actions that shock the conscience or arbitrarily interfere with fundamental rights. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842, 845-46 (1998) at 847, 1717. Allowing a single government official to effectively terminate a business without defined limits on his authority constitutes an unreasonable and arbitrary deprivation of property rights, which is a violation of Due Process.

79.    Further Arlington County's Amendments to Section 14.3 of the Arlington County Code, i.e. the Local Permit Ordinance, violate the Equal Protection Clause stated in the Fourteenth Amendment to the United States Constitution.

80.    Even under its most liberal level of scrutiny, "rational relationship," the Equal Protection Clause still requires that similarly situated businesses be treated equally under the law. Here, the proposed amendments single out towing companies for heightened regulatory burdens that are not imposed on comparable businesses, e.g. car repossession companies or even bail bondsmen, who protect the property of third parties against illegal conduct.

81.    More pertinently, the Local Permit Ordinance allows the County to review and evaluate the service contracts of each individual towing company, prior to approving the license

which is required by for their continued existence.  No other industry has that requirement.

82.    To succeed on an equal protection, claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

83.    Once a plaintiff satisfies that requirement, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654. To succeed on an equal protection, claim, a plaintiff must allege sufficient facts to satisfy both requirements. *Veney*, 293 F.3d at 731.

84.    When a law restricts a use but permits it "to another similarly situated, the **restriction** is discriminatory, and, if not substantially related to the public health, safety, or welfare, constitutes a denial of equal protection of the laws." *Bd. Sup. James City County* v. *Rowe*, 216 Va. 128, 140, 216 S.E.2d 199, 210 (1975).

85.    Notably, no other businesses –law firms, lending institutions, medical offices --  are required to submit copies of all private contract to Arlington County before operating their business ***on private property***.

86.    When a law targets a specific class of businesses without a rational basis, it violates the Equal Protection Clause. The proposed amendments impose disproportionate burdens on towing operators, without any demonstrated public safety or consumer protection need justifying such differential treatment.

87.    Here, the Local Permit Ordinance (i) requires that each towing company submit approval for each private contract it enters into to tow from private property and (ii) allows Arlington County to arbitrarily determine what business private property owners are able to

contract with to tow vehicles from their property.

88.    This is a *prima facie* violation of the 14th amendment, both for Due Process and Equal Protection, as it allows Arlington County to (i) determine which private property is eligible to receive towing services and (ii) restrict certain companies from operating in Arlington County without any sort of determinative factor.

89.    Further, given the arbitrary basis for granting and issuing permits without an established procedure, Arlington County has effectively performed an unconstitutional taking without compensation of Advanced Towing's business.

90.    As such, the Local Permit Ordinance should be vacated or, alternatively, Advanced Towing must be compensated for the taking of its business.

**COUNT III:**
**REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF BASED UPON VIOLATION OF ARTICLE I, SECTION 11 OF THE VIRGINIA CONSTITUTION'S CONTRACTS CLAUSE**

91.    Plaintiff restates and incorporates each of the allegations stated previously herein.

92.    Article I, Section 11 of the Virginia Constitution states that "no person shall be deprived of his life, liberty, or property without due process of law; **that the General Assembly shall not pass any law impairing the obligation of contracts**." (emphasis added)

93.    This language is broader and more expansive than the Due Process language in the Fifth or Fourteenth Amendments to the United States Constitution.

94.    The Contract Clause of the Constitution of Virginia limits the State's power to abridge existing contracts in the exercise of its otherwise legitimate police powers. *Waterman's Assoc. v. Seafood Inc.*, 227 Va. 101, 110 (1984) (internal citations omitted); *see also Heublein, Inc. v. Department of Alcoholic Beverage Control,* 237 Va. 192 (1989) (finding that a law that modified and regulated existing contracts to violate the contract clause of the Virginia Constitution).

95.    Here, the text of the Local Permit Ordinance, as enacted by Arlington County, specifically within Chapter 14.3-12(B), violates the Contract Clause by requiring that all private contracts between towing companies and private property owners to tow from private property be submitted to Arlington County for approval.

96.    This includes "existing contracts" that may exist between towing companies and private property owners, and which may renew over future years.

97.    This provision allows Arlington County to effectively (i) deny the private right to contract between Advanced Towing and its customers and (ii) legislate the present and future contractual relations between Advanced Towing and its client base (even assuming Advanced Towing has received a towing permit).

98.    This impairs the ability of Advanced Towing to perform on its contracts.

99.    Further, this regulation violates the freedom of contracting that is favored in Virginia as private property owners are not able to hire a licensed towing company to remove trespassing vehicles from their lot. *VACORP v. Young*, 298 Va. 490, 496 (2020) (common-law tradition counsels refraining from interfering with  lawful exercises of the "freedom of contract.").

100.    This is an improper exercise of police power that violates the Contract Clause of the Virginia Constitution, as held in *Waterman's Assoc. v. Seafood Inc.*, 227 Va. 101 (1984) and *Heublein, Inc. v. Department of Alcoholic Beverage Control,* 237 Va. 192 (1989).

<u>**COUNT IV:**</u>
<u>**REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF FOR**</u>
<u>**VIOLATION OF ARTICLE I, SECTION 11 OF THE VIRGINIA CONSTITUTION –**</u>
<u>**INVERSE CONDEMNATION**</u>

101.    Plaintiff restates and incorporates each of the allegations stated previously herein.

102.    Virginia law recognizes inverse condemnation as a viable theory of recovery for *de facto* violations of Article I, Section 11 of the Constitution of Virginia.

19

103.    Inverse condemnation permits recovery when "property is taken or damaged for public use" - thereby bestowing on the owner a right to "sue upon an implied contract that he will be paid therefor such amount as would have been awarded if the property had been condemned under the eminent domain statute." *See Burns v. Board of Supervisors*, 218 Va. 625, 627 (1977).

104.    Here the provisions of the Local Permit Ordinance, specifically those (i) requiring private contracts to be subject to an individual permit and (ii) granting arbitrary discretion to the County Manager to deny permits, are laws that constitute inverse condemnation actions by Arlington County.

105.    These provisions allow Arlington County to effectively take any private property and take it for public use as it allows Arlington County to arbitrarily determine which property is eligible to receive towing services without compensating the owners of the property.

106.    Virginia law, specifically *Va. Code § 46.2-1231*, grants property owners the right to remove unauthorized vehicles from their property, recognizing the importance of efficient and effective parking enforcement to protect property rights.

107.    Any law that precludes the ability of private property owners to remove trespassing vehicles from their law effectively takes their property for public use.

<u>COUNT V:</u>
<u>REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF FOR
VIOLATION OF DUE PROCESS CLAUSE STATED IN
ARTICLE I, SECTION 11 OF THE VIRGINIA CONSTITUTION</u>

108.    Plaintiff restates and incorporates each of the allegations stated previously herein.

109.    Article 1 Section 11 of the Virginia Constitution states that "That no person shall be deprived of his life, liberty, or property without due process of law."

110.    Further, the arbitrary discretion granted to the County Manager by the Amendments to Section 14.3 of the ACC allow for the County Manager to take Advanced Towing's Business

and its private lot used to run its business (and store towed cars) for arbitrary reasons without reasonable due process of law .

111.    Advanced Towing's lot would be rendered useless if it is arbitrarily denied a towing permit by Arlington County for perceived past grievances and would effectively been condemned by Arlington County. Similarly, its tow trucks would have effectively been taken by Arlington County and rendered unusable by the arbitrary denial of a permit.

*112.*    Granting the County Manager an arbitrary sole discretion to deny or grant permits has served as the basis to invalidate ordinances for violating due process of law. *See Assaid v. Roanoke,* 179 Va. 47 (1942). *See also Helmick v. Town of Warrenton*, 254 Va. 225, 232 (1997) set forth that there is a "general requirement that guidelines accompany the delegation of legislative authority to avoid vesting arbitrary discretion in the decision-maker." (citing *Andrews v. Board of Supervisors of Loudoun County*, 200 Va. 637, 639 (1959); *Gorieb v. Fox*, 145 Va. 554, 556 (1926) ("generally speaking, statutes and ordinances which vest arbitrary discretion in public officials, without prescribing a uniform rule of action, by which they shall be guided, are unconstitutional and void")

113.    Further, the stated appeal process set forth in Section 14.3-13 does not set forth a procedure for any denial of a permit to be sought through judicial redress, placing the review of the denial of any permit with the elected county board, subject to political forces, without any means of further redress.

114.    This further violates the due process clause by failing to provide an avenue for judicial redress from a impartial judge rather than a politically motivated Board that enacted this ordinance to put Advanced Towing out of business.

## COUNT V:
## COUNT FOR DECLARATORY AND INJUNCTIVE RELIEF
## FOR ULTRA VIRES ACTIONS TAKEN
## IN VIOLATION OF THE DILLON RULE

115.    Plaintiff restates and incorporates each of the allegations stated previously herein.

116.    The Dillon Rule provides that "municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers [from the General Assembly], and those that are essential and indispensable." *Bd. of Zoning Appeals v. Bd. of Supervisors*, 276 Va. 550, 555-556  (2008) *accord Board of Supervisors v. Countryside Investment Co.*, 258 Va. 497, 502-05, (1999); *City of Richmond v. Confrere Club of Richmond*, 239 Va. 77, 79 (1990).

117.    This is so because "[a] municipal corporation has no element of sovereignty. It is a mere local agency of the state, having no other powers than such as are clearly and unmistakably granted by the law-making power." *Whiting v. Town of West Point*, 88 Va. 905, 906, 14 S.E. 698, 699 (1892); *see Hunter v. City of Pittsburgh*, 207 U.S. 161, 178, 28 S. Ct. 40, 52 L. Ed. 151 (1907) ("Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them.").

118.    Thus, "[i]f there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." *Board of Supervisors v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995); *accord  City of Winchester v. Redmond*, 93 Va. 711, 714 (1896).

119.    By attempting to regulate the private contracts entered into by its local towing companies, Arlington County has both violated Article I, Section 11 of the Virginia Constitution ("the General Assembly shall not pass any law impairing the obligation of contracts") and has

exceeded the scope of authority granted by HB 959 and HB 1287's amendments to the Virginia Code granting local governments limited additional authority to regulate towing companies.

120.    This act of overbreadth by the County both violates the Dillon Rule (and the Virginia Constitution) and renders the Local Permit Ordinance obsolete.

### COUNT VI:
### REQUEST FOR PRELIMINARY AND
### PERMANENT INJUNCTIVE RELIEF

121.    Plaintiff restates and incorporates each of the allegations stated previously herein.

122.    In order to prevent irreparable harm associated with the unconstitutional nature of the  December 2024 Amendments to Chapter 14.3 of the Arlington County Code, Advanced Towing requests injunctive relief enjoining Arlington County from enforcing any of the amended provisions of Chapter 14.3 of the Arlington County Code that regulate towing permits and other related procedures.

123.    Under the *Winter v. NRDC, Inc.,* 555 U.S. 7 (2008) standard, a plaintiff is required to make a clear showing that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

124.    Here, there is a clear showing that the enacted amendments are *prima facie* violations of both the 5th and 14th Amendments, as well as Article I, Section 11 of the Virginia Constitution, and that Advanced Towing is likely to succeed on the merits.

125.    Advanced Towing is likely to suffer irreparable harm if the enactments are allowed to remain, where it will effectively be put of our business and lose its market share while this litigation is pending. Similarly, the balance of the equities tip in Advanced Towing's favor as it will preserve the status quo of the parties that has existed for foreseeable past.

126.    Additionally, it is in the public interest as allowing an unconstitutional law to take effect would not be in the general interest of the public.

127.    Accordingly, the December 2024 Amendments to Chapter 14.3 of the Arlington County Code should be permanently enjoined from taking effect and any current effect of those amendments be suspended indefinitely.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE based on the foregoing, Plaintiff Advanced Towing Company, LLC respectfully requests that this Court:

I.    Issue a declaratory judgment that individually and/or cumulatively that the Amendments to Arlington County Code Chapter 14.3, enacted by the Arlington County Board on December 2024, i.e. the Local Permit Ordinance, are unconstitutional under the United States Constitution or the Virginia Constitution (or alternatively, violate the Dillon Rule) .

II.    Issue permanent temporary and permanent injunctive relief, without bond, restraining Defendant Arlington County, and their employees, agents, and successors in office from enforcing any challenged law that is declared unconstitutional, and other associated Virginia statutes and regulations required to provide full relief;

III.    Alternatively, (i) find that a "taking" has occurred under the meaning of the Fifth Amendment of the United States Constitution and Article I, Section 11 of the Virginia Constitution, (ii) awarding damages to Advanced Towing for the value of its taken business, in an amount to be proven at trial, and (iii) awarding such further relief as is eligible for an inverse condemnation under Virginia law, e.g. per Section

25.1-420 of the Virginia Code.

IV.    Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any associated Virginia Code section for said violations.

V.    All further relief that the Court deems just and proper.

Dated: March 17, 2025                    Respectfully Submitted,

ADVANCED TOWING COMPANY, LLC

BY COUNSEL

*/s/ J. Chapman Petersen*
_____
J. Chapman Petersen, Esq., VSB No. 37225
Federico J. Zablah, Esq., VSB No. 96031
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, VA 22030
Telephone: 571-459-2512
Facsimile: 571-459-2307
jcp@petersenfirm.com
fjz@petersenfirm.com
*Counsel for Advanced Towing Company, LLC.*

25